**Panagiotis KALATJIS, aka Peter Kallas, Appellant,**

**v.**

**George K. ROSENBERG, as District Director, Immigration and Naturalization Service, Los Angeles, California, Appellee.**

**No. 17925.**

United States Court of Appeals Ninth Circuit.

June 25, 1962.

Rehearing Denied Aug. 1, 1962.

David C. Marcus, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief, Civil Section, and Morton H. Boren, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

"As Chief Justice John Marshall said a century and a quarter ago, '[i]f courts were permitted to indulge their sym-

pathies, a case better calculated to excite them can scarcely be imagined.' " [1]

Appellant was ordered deported as an alien who had illegally entered this country. Under certain circumstances of "hardship," the Attorney General of the United States or his delegate may suspend deportation. This suspension is discretionary with the Attorney General or his delegate. Its exercise adversely to appellant is here alleged to have been an abuse of discretion.

■ Appellant asks us to substitute his judgment for that of the Attorney General. This we cannot do. We can only determine whether there exists a clear abuse of discretion. The court below held there was none. We agree.

Panagiotis Kalatjis, as an alien, entered the United States illegally (i. e., without documents or inspection) on June 23, 1951. He married an American citizen on September 9, 1951, and has two children by that marriage. In April of 1953 he was apprehended, and granted voluntary departure. He did not disclose at this time any previous arrests.[2] He departed to Tijuana, Mexico, and awaited action on his request for a visa. This was denied on April 18, 1955, under the provisions of § 212(a) (19) of the Immigration and Nationality Act.[3]

The alien again entered this country illegally on March 24, 1956. Upon advice of an attorney, he immediately surrendered to the United States Immigration Service and requested suspension of deportation under § 244 (8 U.S.C.A. § 1254). An order was issued to show cause why he should not be deported. A to appellant, as he had not resided in

the United States for seven years. He was found deportable as an alien excludible at time of his last entry, because he entered to live and work here but did not possess an immigrant visa as required by § 212(a) (20) of the Act. He was granted voluntary departure.

Appellant took an appeal from the order of deportation on June 12, 1956. This was dismissed August 29, 1956. On September 27, 1956 a petition was filed "for the exercise of relief," requesting deferment of voluntary departure. On December 12, 1956, appellant received a "conditional parole" letter relaxing his reporting conditions. No further action was taken for almost three years, but on August 7, 1959, the appellant was notified he must "voluntarily" depart by September 8, 1959. His appeal was dismissed; he did not depart; and hence, on September 10, 1959, his right to voluntary departure was withdrawn.

Appellant then filed a petition (a) for reconsideration of the order of departure; (b) to reopen proceedings; (c) to stay deportation upon grounds of physical persecution until appellant could qualify for the statutory residence period; and (d) for "other relief."

This was denied by the Board of Immigration Appeals in the following language:

"With regard to counsel's request that respondent's deportation be stayed to permit the alien to qualify for the statutory residence period needed to support an application for suspension of deportation, it is well to remember that respondent's last entry occurred on March 24, 1956.

hearing was had, at which time appellant was represented by counsel. On June 4, 1956, § 244(a) (1) was found inapplicable

1. Dissent of Mr. Justice Clark, Gallegos v. Colorado, 82 S.Ct. 1209, decided June 4, 1962, quoting from The Cherokee Nation v. Georgia, 5 Pet. 1, 15, 8 L.Ed. 25 (1831).

2 Petitioner had been convicted, in absentia, on January 12, 1948, at Patras, Greece, of "forgery and falsification of a

seal," and sentenced to six years and three months imprisonment.

3. 8 U.S.C.A. § 1182: "(a) * * * [T]he following classes of aliens shall be ineligible to receive visas * * * :
* * * * *
"(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact; * * *."

Section 244(a) (1) applications may not now be filed and Section 244(a) (3) and (5) are inapplicable to this case. Section 244(a) (2) is also not applicable.

"However, Section 244(a) (4) is pertinent and requires ten years physical presence for eligibility. Respondent, having been physically present in this country only about three and one-half years, has considerably less than the required statutory minimum residence. Hence, counsel's request that his deportation be stayed until after March 24, 1966, is inappropriate and the request is denied.

"Concerning the stay, or hearing on such application, based on physical persecution, respondent should direct his request to the Immigration Service.

"ORDER: It is ordered that the outstanding order of deportation be withdrawn and the alien be permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time and under such conditions as the officer-in-charge of the District deems appropriate.

"IT IS FURTHER ORDERED that if the alien does not depart from the United States in accordance with the foregoing, the order of deportation be reinstated and executed."

Appellant then filed a petition for stay of proceedings "under Section 243 (h) of the Immigration and Nationality Act (8 U.S.C. § 1253(h) ) * * * upon the grounds of physical persecution." Section 243(h) reads, in material part:

"(h) The Attorney General is authorized to withhold deportation of any alien * * * to any country in which in his opinion the alien would be subject to physical persecution * * *."

Greece was designated by the Attorney General as the proper country to which appellant should be deported, and a hearing was had on his charges of probable physical persecution.

When appellant appeared at his deportation hearing in 1953, he submitted two certificates showing he had no penal record and was not wanted for any punishable act. When he went to Tijuana, Mexico, the American Consul there advised him (and appellant asserts this was his first knowledge of the fact) that he had been convicted by the Court of First Instance in Patras (near Athens), Greece, on January 12, 1948, of the crime of forgery of a seaman's identification book and falsification of the seal thereon. His was a trial in absentia. He was sentenced to one year in prison for the forgery, and six years in prison for the falsification of the seal, but apparently a total term of six years and three months was imposed.

Appellant's fear of physical persecution, as disclosed by his affidavit and his direct testimony (of January 16, 1960) is based on his fear of the power of certain police officers, particularly "the witness against him," a police officer who allegedly sold him the false seaman's identification book. Appellant fears his action in speaking out against the German occupation of Greece, and in innocently joining the "Elas," a Communist guerilla organization, incurred the enmity of certain other police officers. He claims he was beaten and tortured by these police officers in 1945.

The Special Inquiry Officer summarized appellant's testimony as follows:

"* * * It is admitted by the applicant that the present government of Greece is a democratic one. It is also admitted by him that his fear of persecution is based solely on his fear of oppression from those police officials, who, he claims, arranged for his conviction in absentia on trumped-up charges in order to hide their own traitorous and criminal war-time acts and remove him as a threat to their security. Applicant has not presented any evidence whatsoever, that unwarranted persecution on the basis of political

opinion, race or religion, is practiced by the present government of Greece. The U. S. Court of Appeals for the Third Circuit declared in the case of Lavdas v. Holland, 235 F.2d 955 (decided on July 11th, 1956), that notice should be taken that political circumstances in Greece have changed greatly since 1949 and 1950, are far from anarchic, and that an organized and controlling government then existed in Greece, which was not Communist dominated and did not sanction Communist violence against anti-Communists. No change in form of Government has taken place in Greece since then.

"Section 243(h) of the Immigration and Nationality Act does not authorize the withholding of deportation in order to avoid possible *prosecution* or lawful punishment for crime. * * *"

It is concluded that appellant will not be subject to physical persecution, as that term is understood in the Immigration and Nationality Act, if deported to Greece.

Appellant submitted photostatic copies of the original court proceedings, and a translation thereof, as found in the records of the "Athens' Court of Assizes, Session of January 12, 1948." One witness appeared before that court, J. Dzamaloukos. He testified under oath. The Clerk read the testimony of a second prosecution witness (introduced by a sworn deposition), one George D. Kostopoulos. The court then *deliberated* in secret, on the spot, with only the Clerk present. Appellant was found guilty.

The record shows that the person who allegedly introduced the appellant to the witness Dzamaloukos—namely, one "Dem. Stephopoulos," was *not* "sworn in as a witness." The record does not disclose if he was or was not present, or did or did not testify. We assume he was neither present, nor sworn, nor that he gave testimony, as no mention of any of these matters is made. This translation was certified to April 16, 1956.

Appellant urges that this record establishes:

(1) That the witness against petitioner was not sworn;

(2) that the proceedings were held in secret, and "that by reason of the foregoing your affiant will be subject to physical persecution by imprisonment."

The basis of appellant's several conclusions is unsound. There is no evidence that *witnesses* were not sworn; nor that proceedings, other than the deliberation, were in secret. The exclusion of witnesses is not unknown to the courts of this country, and every American jury presumably deliberates in secrecy.

■■ More important, "the term 'physical persecution' shall be taken to mean confinement, torture, or death inflicted on account of race, religion, or political viewpoint." Blazina v. Bouchard, 3 Cir.1961, 286 F.2d 507 at 511; see also, Dunat v. Hurney, 1962, 297 F. 2d 744 at 746, where the Third Circuit more fully explains the term. Imprisonment for conviction of a crime does not constitute physical persecution as that term is used in the remedial statute.

Appellant was again ordered to leave the United States on March 2, 1960, by the District Director of the Immigration and Naturalization Service, and voluntary departure was permitted. He refused this, and was ordered deported on June 15, 1960.

Appellant thereupon filed his petition for judicial review in the district court. After answer, a motion for summary judgment was filed and granted (Fed.R. Civ.P. 56, 28 U.S.C.A.; local rule 3(d) (2)), West's Ann.Code.

The court below found appellant-plaintiff had exhausted his administrative remedies; that all hearings and proceedings had been conducted with procedural fairness; that appellant received all rights of due process; that there is substantial evidence to support the findings and conclusions of the Special Inquiry Officer and of the Board of Immigration Appeals.

The trial court also found there existed no equitable estoppel barring the deportation. We note the government made no misleading statement to appellant, nor had it taken any misleading position on which appellant could or did rely to his detriment. Hence we agree no equitable estoppel arose. Finding no error, the district court affirmed the action of the appellee-defendant Immigration and Naturalization Service, and finding no genuine issue as to any material fact, did it by granting a motion for summary judgment. Again, we agree such action was proper. (Cf.: Montgomery v. Ffrench, 8 Cir.1962, 299 F.2d 730.)

The discretionary powers established by the legislative branch of our government have been duly and properly exercised by those entrusted by law to so exercise them. No power rests in us to interfere, nor can we substitute our discretion for that of the Attorney General, or his lawful delegate.

The judgment is affirmed.