Manuel MENDEZ and Teresa Lastra de Mendez, Appellants,

v.

H. I. MAJOR, District Director of the Immigration and Naturalization Service, Appellee.

No. 17621.

United States Court of Appeals Eighth Circuit.

Jan. 20, 1965.

Forrest Boecker, St. Louis, Mo., William B. Ewald, St. Louis, Mo., for appellants.

Don. R. Bennett, Attorney, Criminal Division, Dept. of Justice, Washington, D. C., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., Herbert J. Miller, Jr., Asst. Atty. Gen., and Kenneth C. Shelver, Attorney, Dept. of Justice, Washington, D. C., for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and DAVIES, District Judge.

RONALD N. DAVIES, District Judge.

This action was first instituted in the United States District Court for the Eastern District of Missouri to review administrative action taken by the District Director of Immigration and Naturalization.

The appellants, Dr. Manuel Mendez and Teresa Lastra de Mendez, his wife, are Mexican nationals who, accompanied by a son, were admitted into the United States in 1955 as exchange visitors under the United States Information and Educational Exchange Act of 1948.[1] While residing in Baltimore, Maryland,

1. 62 Stat. 6 (1948).

a second son was born to them, August 31, 1956. In that same year the Information and Educational Exchange Act under which the appellants were admitted[2] was amended[3] to provide:

"No person admitted as an exchange visitor under this section * * * shall be eligible to apply for an immigrant visa * * * or for adjustment of status to that of an alien lawfully admitted for permanent residence, until it is established that such person has resided and been physically present in a cooperating country or countries for an aggregate of at least two years following departure from the United States."

In 1957 Dr. Mendez applied for an extension of his temporary stay in the United States. By letter dated October 2, 1957, he was informed by the Immigration and Naturalization Service that:

"Present law and regulations provide that any alien who was admitted to the United States after June 4, 1956, as an Exchange Visitor, or otherwise acquired the status of an Exchange Visitor after that date shall not be eligible to apply for and receive an immigration visa, for permanent residence, or a non-immigrant visa as a trainee or to perform temporary services in the United States, or for adjustment of status to that of an alien lawfully admitted for permanent residence, unless the Consular Officer is satisfied that such an alien has resided and been physically present abroad for an aggregate of at least two years since his departure from the United States, following the termination of his Exchange Visitor's status, in a country or countries cooperating in the Exchange Visitors Program. This includes any Exchange Visitor who is granted an extension of his temporary stay in the United States after September 21, 1956."

After acknowledging that he had been informed of the conditions that would attach if he were granted an extension, Dr. Mendez again submitted his application for extension of temporary stay in this country which was granted.

In 1961 the Immigration and Nationality Act of 1952 was amended by adding Sec. 212(e), 8 U.S.C.A. § 1182(e),[4] to provide for a waiver by the Attorney General of the United States of the two year residence abroad requirement upon favorable recommendation of the Secretary of State made pursuant to request of the Commissioner of Immigration and Naturalization after he had determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child if the spouse or child were a citizen of the United States.

In August of 1962 after the extension of their temporary stay had expired, Dr. Mendez and his wife each applied to the District Director of Immigration and Naturalization[5] for a waiver of the two year foreign residence requirement, basing their applications upon the alleged exceptional hardship it would impose upon their United States citizen son if compliance were enforced.

The District Director concluded that the "exceptional hardship" standard had not been met, and he declined to submit a request to the Secretary of State for a recommendation to the Attorney General that the waiver be granted. Upon a subsequent motion to reconsider the applications, the District Director again found that the degree of hardship required by the statute had not been demonstrated.

Predicating jurisdiction upon the Administrative Procedure Act, 5 U.S.C.A. § 1009, appellants brought this action seeking judicial review of the District

---

2. 62 Stat. 6 (1948), amended 66 Stat. 276 (1952).

3. 70 Stat. 241 (1956).

4. 75 Stat. 527–535 (1961).

5. 22 C.F.R., Sec. 63.6(j) (which sets forth procedure).

Director's refusal to submit the waiver applications to the Secretary of State. It was contended in Count One of the Amended Complaint that the District Director's ruling was arbitrary and capricious, an abuse of discretion, a usurpation of legislative power and contrary to law. Equitable relief was sought in Count Two by requesting cancellation of their Exchange Visitor visas, and in effect changing their status to that of "non-quota immigrants" under 8 U.S. C.A. § 1101(a) (27) (C). The District Director's motion for summary judgment was granted. Mendez v. Major, D.C., 226 F.Supp. 364.

An appeal was then perfected to this Court.

■ In view of the 1961 amendment to Sec. 106(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a (a), which provides for initial review in the Circuit Courts of Appeals of "all final orders of deportation heretofore or hereafter made against all aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title * * *", we must first determine whether the Court below had jurisdiction to review the denial by the District Director of the relief sought under Sec. 212(e). The phrase "final orders of deportation" has recently been construed by the United States Supreme Court in Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281, the Court holding:

"It can hardly be contended that the meaning of the phrase 'final orders of deportation' is so clear and unambiguous as to be susceptible of only a narrow interpretation confined solely to determinations of deportability. If anything, the literal language would appear to include a denial of discretionary relief, made during the same proceedings in which deportability is determined, which effectively terminates the proceedings. In arriving at the intended construction of this language, we must therefore inevitably turn to the purpose of Congress in enacting this legislation. The fundamental purpose behind § 106(a) was to abbreviate the process of judicial review of deportation orders in order to frustrate certain practices which had come to the attention of Congress, whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts. * * * *"

The Fifth Circuit Court of Appeals did not view the decision in Foti as indicating an intention to include within the scope of Sec. 106(a) all discretionary determinations relating in any way to deportation proceedings and declined initial jurisdiction to review a denial of a petition for a waiver under Sec. 212(e) which was made prior to and separate from any deportation proceedings. Samala v. Immigration and Naturalization Service, 5 Cir. 1964, 336 F.2d 7.[6]

■ The appellee neither denied nor explained by answer any of the allegations contained in the Amended Complaint, but instead relied upon the administrative record in support of his motion for summary judgment which the District Court granted. We think that such procedure was entirely proper. Todaro v. Pederson, D.C., 205 F.Supp. 612, aff'd 6 Cir. 1962, 305 F.2d 377, cert. denied, 371 U.S. 891, 83 S.Ct. 190, 9 L. Ed.2d 124; Kalatjis v. Rosenberg, 9 Cir. 1962, 305 F.2d 249. Cf. Montgomery v. Ffrench, 8 Cir. 1962, 299 F.2d 730.

■ The contention of appellants that to enforce the two year residence abroad requirement would be in violation of their United States citizen son's constitutional rights is without substance. There can be no doubt that Congress has the power to determine the conditions under which an alien may enter and remain in the United States,

---

6. But see Talavera v. Pederson, 6 Cir. 1964, 334 F.2d 52; Skiftos v. Immigration and Naturalization Service, 7 Cir. 1964, 332 F.2d 203; Giova v. Rosenberg, 9 Cir. 1962, 308 F.2d 347, Rev'd. 85 S. Ct. 156 (1964).

Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956; Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317; even though the conditions may impose a certain amount of hardship upon an alien's wife or children. See Swartz v. Rogers, 1958, 103 U.S.App. D.C. 1, 254 F.2d 338; United States ex rel. Hintopoulos v. Shaughnessy, 2 Cir. 1956, 233 F.2d 705, aff'd 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652; Papageorgiou v. Esperdy, S.D.N.Y.1963, 212 F. Supp. 874.

■ There is no merit in appellants' contention that it was improper for the District Director to resort to the legislative history of Sec. 212(e) in construing the phrase "exceptional hardship". It cannot be said that the phrase is so clear and unambiguous as to be susceptible of only one meaning, and it was, therefore, necessary for the District Director to look to the intent of the Congress in passing the Section to determine the proper standard to apply. Though he did find that there was a degree of personal hardship and inconvenience to appellants' citizen son, his further determination that it was not the degree of exceptional hardship contemplated by the statute was neither capricious, arbitrary nor an abuse of discretion. Talavera v. Pederson, 6 Cir. 1964, 334 F.2d 52.

■ The remaining contention of any substance is that the appellants were entitled to equitable relief because when they entered the United States as Exchange Visitors they *could* have entered as immigrants pursuant to 8 U.S.C.A. § 1101(a) (27) (C), and no one, including the personnel of the United States Consulate who granted their visas, informed them of this right.

Nowhere do we find any requirement that *all* possibilities under the Nationality and Immigration Act be explained to an alien who desires to enter the United States, Diminich v. Esperdy, 2 Cir. 1961,

299 F.2d 244, and as was said in Kalatjis v. Rosenberg, 305 F.2d 249, " * * the government made no misleading statement to appellant[s], nor had it taken any misleading position on which appellant[s] could or did rely to his [their] detriment." The appellants here were fully informed of the consequences if an application for an extension of stay were granted and, this being so, they are not entitled to the equitable relief which they seek.

The judgment of the District Court is

Affirmed.