Dr. Genesh M. NAYAK, Pro Se, and Seema Nayak, by his duly appointed and acting guardian ad litem, N. George Mubarak, Plaintiffs,

v.

Cyrus R. VANCE, as Secretary of State for the United States of America, Griffin D. Bell, as Attorney General, and Lionel Castillo, as head of the Bureau of Naturalization and Immigration, Defendants.

Civ. A. No. 78–856.

United States District Court,
D. South Carolina,
Columbia Division.

Sept. 13, 1978.

Jack F. McGuinn and Ronald H. Hall, Columbia, S. C., for plaintiffs.

Thomas E. Lydon, Jr., U. S. Atty., Dist. of South Carolina, and Glen E. Craig, Asst. U. S. Atty., Columbia, S. C., for defendants.

1. Exhibits attached to plaintiffs' Memorandum (letter from Frank W. McKee, M.D., Assoc. Director, National Commission for Foreign Medical Graduates, dated 1/27/77 shows Dr. Nayak would complete his fourth year of a residence in General Surgery on June 30, 1977).

2. Application for Waiver of the Foreign Service Requirement.

3. 8 U.S.C. § 1182(e) as amended, provides as follows:

"No person admitted under section 1101(a)(15)(J) of this title or acquiring such status after admission (i) whose participation in the program for which he came to the United States was financed in whole or in part, directly or indirectly by an agency of the Government of the United States or by the government of the country of his nationality or his last residence, (ii) who at the time of admission or acquisition of status under section 1101(a)(15)(J) of this title was a national or resident of a country which the Secretary of State, pursuant to regulations prescribed by him, had designated as clearly requiring the services of persons engaged in the field of specialized knowledge or skill in which the alien was engaged, or (iii) who came to the United States or acquired such status in order to receive graduate medical education or training, shall be eligible to apply for an immigrant visa, or for permanent residence, or for a nonimmigrant visa under section 1101(a)(15)(H) or section 101(a)(15)(L) of this title until it is established that such person has resided and has been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States: *Provided,* That upon the favorable recommendation of the Secretary

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

■ Pro se plaintiff Dr. Nayak was born in Mangalore, India December 8, 1942 and came to this country in 1973 as an exchange visitor doctor.[1] Seema Nayak, his son, was born in Columbia in 1975.[2] The specified term of Dr. Nayak's visit has expired. Exchange visitors such as Dr. Nayak are required to return to their native land for two years or work/reside in another foreign country for two years before they are eligible to apply for permanent residence in this country—unless this two-year foreign residence requirement is waived as provided by law.[3]

of State, pursuant to the request of an interested United States Government agency, or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), or that the alien cannot return to the country of his nationality or last residence because he would be subject to persecution on account of race, religion, or political opinion, the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest: *And provided further,* That, except in the case of an alien described in clause (iii), the Attorney General may, upon the favorable recommendation of the Secretary of State, waive such two-year foreign residence requirement in any case in which the foreign country of the alien's nationality or last residence has furnished the Secretary of State a statement in writing that it has no objection to such waiver in the case of such alien."

It is clear that Congress did not intend a lenient waiver policy. See *Silverman v. Rogers,* 437 F.2d 102 (1st Cir. 1970), where the First Circuit quoted the Judiciary Sub-committee as follows:

"It is believed to be detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the adjudication of waivers *including cases where marriage occurring in the United States, or birth of a child or children, is used to support the contention that the exchange alien's departure from this country would cause personal hardship.*" H.R.Rep. No. 721, 87th Cong., 1st Sess. 121 (1961) (emphasis in original).

■ Dr. Nayak sought a waiver[4] of the two-year foreign residence requirement from the Immigration and Naturalization Service. The affidavit in support of his application shows:

PERSONALLY appears Genesh Hanumantha Nayak, who, being duly sworn, deposes and says:

(1) This affidavit is given in Support of United States Department of Justice Immiegration [sic] and Naturalization Service Application for Waiver of the Foreign Residence Requirement of Section 212(e) of the Immigration and Nationality Act, as amended, Form I–612, and Form 1–72 dated 8–13–77, T. E. Minnix, District Director.

(2) If I should have to leave the child, Seema Nayak, a native citizen born in the United States to me and my wife, Mohini Ganesh Nayak, the child would become neglected or be forced to be put out for adoption among strangers.

(3) That it would be to the best interests of said child (United States Citizen) and in the best interests of the United States of America that said child remain a citizen of his native born Country, The United States of America.

(4) That the hardships imposed upon such child and his parents, if required to depart the United States of America would be irreparable and of inestimable harm and hardship in that such child needs his natural parents and needs to absorb the mores and customs of not only his native born land, but need the psychological and financial support which affiant can bring, being an M.D., earning a comfortable living and bringing taxes to America and to the State of South Carolina; that such hardships, coupled with the strange experience of not hearing his parents' native mother tongue would deprive the child of his heritage.

(5) That affiant is applying for permanent residency; that affiant, after the proper efflux of time, intends to and will apply for citizenship for self and spouse to insure the well being of the family unit; that it is more in the interests of the nation of the United States of America that its citizen child have the full protection of his native land than to deprive him of the society and companionship of his natural parents and in learing [sic] of his heritage, language, history and ethnic mores and customs.

His application was denied by the District Director's decision of January 23, 1978. He appealed this decision to the Regional Commissioner of the Immigration and Naturalization Service. On May 9, 1978 the Regional Commissioner affirmed this decision and dismissed this appeal. This action followed the exhaustion of administrative remedies.[5]

■ Plaintiffs claim compelling hardship upon Nayak's "spouse and child". The District Director and Regional Director of the Immigration and Naturalization Service rejected his arguments. This court also rejects and affirms their decision.

In *Acosta v. Gaffney,* Acting District Director, 558 F.2d 1153 (3rd Cir. 1977) the Third Circuit stated as follows:

. . . The claim of the parents, Carlos and Beatriz, requires little discussion. Essentially they assert that the refusal of the stay of deportation order was an abuse of discretion by the INS in view of the economic hardship to which they will be subjected if Carlos is compelled to return to Colombia and cannot find work there as is likely in view of the economic

---

4. Certified copies of the application were attached to defendants' motion, and not refuted.

5. Certified copies of Dr. Nayak's waiver application and supporting Affidavit together with the decisions of the District Director and Regional Commissioner have been filed herein, see note 4.

   Dr. Nayak alleges that 5 U.S.C. 701, *et seq.* (Administrative Procedures Act) and 28

U.S.C. 2201 (Declaratory Judgment Act) are jurisdiction bases. Neither is a jurisdictional base for this action, *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) and *Schulke v. United States,* 544 F.2d 453 (10th Cir. 1976); however, it appears that 28 U.S.C. 1331, as amended in 1976, and 8 U.S.C. 1329 are jurisdictional bases for this action.

conditions in that country. However, these facts, even if proved, are not sufficient to establish such extreme hardship as would warrant the stay of a valid order of deportation. See *Yeung Ying Cheung v. Immigration and Naturalization Ser.,* 422 F.2d 43, 46–47 (3d Cir. 1970); *Pelaez v. Immigration and Naturalization Service,* 513 F.2d 303 (5th Cir.), cert. denied, 423 U.S. 892, 96 S.Ct. 190, 36 L.Ed.2d 124 (1975). Indeed to hold otherwise would tend to open the doors to permanent residence in the United States to any citizen of an underdeveloped country who could get here in one way or another and who desired to remain . .

We turn then to consider Lina's claim for relief. Basically it is that she is entitled to a stay of her parents' deportation order because that order, although admittedly valid as against them, will operate, if executed, to deny to her the right which she has as an American citizen to continue to reside in the United States. . On her behalf it is argued that she will be deprived of this constitutional right of a citizen because as an infant she must remain with her parents and go with them wherever they go . . .

The constitutional right upon which Lina relies is somewhat broader than she describes it. It is the fundamental right of an American citizen to reside wherever he wishes, whether in the United States or abroad, and to engage in the consequent travel. See *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Kent v. Dulles,* 357 U.S. 116, 125, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). It is the right to exercise a choice of residence, not an obligation to remain in one's native country whether one so desires or not, as is required in some totalitarian countries. In the case of an infant below the age of discretion the right is purely theoretical, however, since the infant is incapable of exercising it. As the Court of Appeals for the Fifth Circuit pointed out in *Perdido v. Immigration and Naturalization Service,* 420 F.2d 1179, 1181 (5th Cir. 1969),

. . . a minor child who is fortuitously born here due to his parents' decision to reside in this country, has not exercised a deliberate decision to make this country his home, and Congress did not give such a child the ability to confer immigration benefits on his parents . . . .. It gave this privilege to those of our citizens who had themselves chosen to make this country their home and did not give the privilege to those minor children whose noncitizen parents make the real choice of family residence.

Obviously, as pointed out in the *Perdido* case, an infant of Lina's tender years cannot make a conscious choice of residence, whether in the United States or elsewhere, and merely desires, if she can be thought to have any choice, to be with her parents. It is true, of course, that Carlos and Beatriz could, as Lina's parents and natural guardians, decide that it would be best for her to remain in the United States with foster parents, if such arrangements could be made. But this would be their decision involving the custody and care of their child, taken in their capacity as her parents, not an election by Lina herself to remain in the United States.

The right of an American citizen to fix and change his residence is a continuing one which he enjoys throughout his life. Thus while today Lina Acosta, as an infant twenty-two months of age, doubtless desires merely to be where she can enjoy the care and affection of her parents, whether in the United States or Colombia, she will as she grows older and reaches years of discretion be entitled to decide for herself where she wants to live and as an American citizen she may then, if she so chooses, return to the United States to live. Thus, her return to Colombia with her parents, if they decided to take her with them as doubtless they will, will merely postpone, but not bar, her residence in the United States if she should ultimately choose to live here.

We conclude that the district court was in error in holding that the INS erred in

denying a stay of the deportation order in view of its effect upon Lina Acosta. In so holding we are in accord with the decided cases in other courts of appeals. *Mendez v. Major,* 340 F.2d 128, 131 (8th Cir. 1965); *Enciso-Cardozo v. Immigration and Naturalization Service,* 504 F.2d 1252, 1253 (2d Cir. 1974); *Cervantes v. Immigration and Naturalization Service,* 510 F.2d 89 (10th Cir. 1975); *Gonzalez-Cuevas v. Immigration and Naturalization Service,* 515 F.2d 1222 (5th Cir. 1975). No contrary cases have been cited to us and we have found none. *Indeed a contrary holding would open a loophole in the immigration laws for the benefit of those deportable aliens who have had a child born while they were here.* (pp. 1157, 1158) (Emphasis added.)

In *Perdido v. Immigration and Naturalization Service,* 420 F.2d 1179 (5th Cir. 1969), the Fifth Circuit stated as follows:

Since the Perdidos both entered the United States under the provisions of § 1101(a)(15)(J), they can no longer remain in this country and are required under § 1182(e) to spend two years outside the United States before they are eligible to return on a permanent basis. Section 1182(e) does contain a proviso allowing the waiver of this two-year requirement if it would "impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien)." The Perdidos applied for such a waiver, claiming that their two-year exile would cause an exceptional hardship on their two children who, because of their birth in this country, are United States citizens. The waiver was denied when the Immigration Service determined that no extraordinary hardship existed.

\*   \*   \*   \*   \*   \*

The petitioners contend that as applied to them the two-year foreign residence requirement of § 1182(e) is unconstitutional. Their argument is that a deportation order against the parents of a citizen child deprives the child of a constitutional right. *This argument has been raised and rejected on other occasions. United States ex rel. Hintopoulos v. Shaughnessy,* 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652; *Harisiades v. Shaughnessy,* 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; *Mendez v. Major,* 8 Cir. 1965, 340 F.2d 128.

It is undisputed that the Perdido children have every right to remain in this country. The parents, however, enjoy no such right. They entered this country under a special program which requires a two-year absence before a participant is eligible for permanent residence. Entry into this country by aliens has always been a matter of Congressional discretion. *Harisiades v. Shaughnessy,* supra. The petitioners here took advantage of that discretion in order to come here for educational purposes. *They cannot now complain because the privilege exception under which they arrived also requires that they depart for two years.* Nor can they complain because the discretionary waiver of this requirement provided under § 1182(e) was denied. As the Supreme Court said in *Hintopoulos,* supra:

Suspension of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites have been met. 353 U.S. at 77, 77 S.Ct. at 621.

Furthermore, it is clear that the adjustment hardship complained of by the Perdidos is not the sort intended by Congress to call for the exercise of the waiver provision. *Mendez v. Major,* E.D. Mo., 1963, 226 F.Supp. 364, aff'd, 8 Cir. 1965, 340 F.2d 128. (pp. 1180, 1181). (Emphasis added.)

Similar arguments have been rejected by the First Circuit.

In *Silverman v. Rogers, Secretary of State,* 437 F.2d 102 (1st Cir. 1970) the First Circuit stated as follows:

The relevant facts are not in dispute and may be stated briefly as follows. In July 1964 Ulku Gurkan, an unmarried Turkish citizen, came to the United States as an exchange visitor under the auspices of

the Agency for International Development (AID). Her purpose in coming here was to study psychiatric nursing in order to qualify as an instructor at the Florence Nightingale School of Nursing in Istanbul. She obtained several extensions of her original visa which enabled her to complete her studies and obtain a master's degree in psychiatric nursing from Boston University. The last extension expired on January 30, 1969. On March 9, 1969, she married Charles A. Silverman, an American citizen, and on April 24th of the same year applied to the Immigration and Naturalization Service (INS) for a waiver of the statutory two-year foreign residence requirement which normally she would have to meet before being allowed to return to the United States. 8 U.S.C. § 1182(e) (1964). In her application for the waiver she stated that to require her to leave this country would impose exceptional hardship on her husband because of his ill health . . . Despite strenuous objection from AID, the INS found that the applicant's compliance with the two-year foreign residency requirement would impose exceptional medical hardship on her new husband and requested that the Secretary of State recommend whether the waiver should be granted. The Secretary recommended that the waiver not be granted . . . (pp. 103, 104).

\* \* \* \* \* \*

We therefore resolve the statutory ambiguity in favor of giving the Secretary a veto over hardship waiver applications. We turn now to plaintiff's alternative argument, that to allow the government to refuse Mrs. Silverman the right to reside in the United States would deprive both plaintiffs of their constitutional rights. We see no merit in this contention. Mrs. Silverman enjoys no special right to remain in this country, it being within congressional discretion to place conditions on her right of entry or continued residence. *Harisiades v. Shaughnessy,* 342 U.S. 580, 584–591, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *Perido v. Immigration and Naturalization Service,* 420 F.2d 1179, 1181 (5th Cir. 1969). Plaintiffs also argue that the government's action here is destroying their marriage. Even assuming that the federal government had no right either to prevent a marriage or destroy it, we believe that here it has done nothing more than to say that the residence of one of the marriage partners may not be in the United States. It does not attack the validity of the marriage. *Swartz v. Rogers,* 103 U.S.App.D.C. 1, 254 F.2d 338, 339, cert. denied, 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1372 (1958); cf. *Papageorgiou v. Esperdy,* 212 F.Supp. 874, 877 (S.D.N.Y.1963); see also *Mendez v. Major,* 340 F.2d 128, 132 (8th Cir. 1965). (p. 107).

This court's attention has been called to *Nwankpa v. Kissinger,* 376 F.Supp. 122 (D.C.Ala.1974), affirmed 506 F.2d 1054 (5th Cir. 1975). Plaintiff there sought a waiver of the two-year foreign residence requirement based on the alleged exceptional hardship it would cause his infant son born in this country. The Commissioner found that such requirement would cause exceptional hardship on the child but " . . . the Secretary of State has made no recommendation that the two-year residential requirement be waived, and the Attorney General has made no finding that the admission is in the public interest." (p. 124). In granting summary judgment for the defendants the Court stated as follows:

It is alleged that the Court has original jurisdiction of this action under 28 U.S.C.A. § 1361, the Declaratory Judgment Act, 28 U.S.C.A. § 1201 and the Administrative Procedure Act, 5 U.S.C.A. § 701 et seq. Section 1361 effectively gives jurisdiction to this Court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Section 2201 provides that this Court may declare the rights and other legal relations of any interested party entitled to a declaratory judgment. Sections 701 et seq., provide, in pertinent part, for review of administrative proceedings, but such review is limited by the provision that "(a) this Chapter ap-

plies, according to the provisions thereof, except to the extent that—* * * (2) agency action is committed to agency discretion by law." It, therefore, appears to this Court that this Court has jurisdiction only if the Defendants, or one of them have an affirmative duty owed to Plaintiff and if there is no agency discretion involved.

\* \* \* \* \* \*

In the opinion of this Court, the Attorney General had no discretion in this matter. While the Commissioner of Immigration and Naturalization, after several contrary rulings and much consideration, found the exceptional hardship on the alien's child who is a citizen of the United States, the Secretary of State has made no recommendation that the two-year residential requirement be waived, and the Attorney General has made no finding that the admission is in the public interest. The Attorney General has no discretion to grant the waiver unless these matters co-exist. The question then is whether the Attorney General has a duty to find the admission of the plaintiff to be in the public interest and whether the Secretary of State has a duty to favorably recommend the waiver. This Court is of the opinion that neither official had such an affirmative duty. See *Silverman v. Rogers,* 437 F.2d 102 (CCA 1), reversing *Silverman v. Rogers,* D.C., 309 F.Supp. 570. Whether the "favorable recommendation" must come from the Secretary of State or whether it may come either from the Secretary of State or from the Commissioner of Immigration and Naturalization, the Attorney General in this case has made no finding that the admission of the alien would be "in the public interest" as required by the statute. § 1182(e).

. . . In the opinion of this Court, not only the Secretary of State, but also the Attorney General, has the veto power over such a waiver and is granted a dis-

cretion thereunto pertaining by the statute. In this Court's opinion, Congress, therefore, wisely gave limited power for judicial review of the discretionary functions of the Attorney General and the Secretary of State, and this case does not, in the opinion of this Court, fall within the judicial review power as limited by 5 U.S.C. § 701(a)(2). (pp. 123, 124, 125).

In this case there is a claim in plaintiffs' brief[6] that Dr. Nayak's son, Seema, is suffering from an unspecified "rare skin disease, treatment for which would not be available were the infant exiled to India from her [sic] native land." This alleged illness was not mentioned in Dr. Nayak's affidavit filed in support of his application for the waiver, and does not appear to have been substantiated by any documentation submitted to INS, or in any way considered, either by the District Director or the Regional Commissioner, in sharp contrast to the record made up before INS in *Yu v. Marshall,* 312 F.Supp. 229 (S.D.Tex.1970).

It is generally held that: "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action. *Unemployment Compensation Commission v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946); 3 Davis Administrative Law Treatise, sec. 20.06 (1958). This principle has been applied to INS cases as well. In *Mendez v. Major,* 340 F.2d 128 (8th Cir. 1965), as in this case, plaintiff made allegations in his complaint which were not supported by anything in the record as made up before INS.

The appellee neither denied nor explained by answer any of the allegations contained in the Amended Complaint, but instead relied upon the administrative record in support of his motion for summary judgment which the District Court granted. We think that such procedure

---

6. Plaintiffs filed a brief in opposition to defendants' motion and in support of plaintiffs' motion for summary judgment.

was entirely proper. *Id.* at 131 (citations omitted).

The Court of Appeals went on to affirm the judgment of the District Court.

■ As to Dr. Nayak's claim that he is not subject to the two-year home residency requirement of Section 212(e), the wording of the statute is clear. Any alien exchange visitor:

. . . who at the time of admission or acquisition of status under section 1101(a)(15)(J) was a national or resident of a country which the Secretary of State, pursuant to regulations prescribed by him, had designated as clearly requiring the services of persons in the field of specialized knowledge or skill in which the alien was engaged . . . shall be eligible to apply . . . [for change of status] . . . until it is established that such person has resided and has been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States. (8 U.S.C. § 1182(e) ).

All persons in the "General Practice of Medicine" and "Recognized Medical Specializations" from Dr. Nayak's native country, India, are included in the "Skills List" published by the Secretary of State, which was in full force and effect at the time of Dr. Nayak's entry into the United States and is still in full force and effect (see 37 Fed.Reg. 8099, 8106; April 25, 1972). He is clearly subject to Section 212(e), as the Regional Commissioner noted in his final order approving the ruling of the District Director.

This court takes cognizance of the fact that of all the published opinions where hardship to a citizen or permanent resident spouse or child was relied on as the basis for attacking INS refusal to stay deportation or to request waiver of the two-year home residence requirements of Section 212(e), only one (*Yu v. Marshall,* supra) found the refusal to be arbitrary and capricious. All of the others upheld the discretionary action of INS. See *Acosta v. Gaffney,* 558 F.2d 1153, 1157 (3d Cir., 1977); *Mendez v. Major,* supra, at 132; *Talavera v. Pederson,*

334 F.2d 52, 58 (6th Cir. 1964); *Hintopolous v. Shaughnessy,* 353 U.S. 72, 77, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

■ Plaintiffs' claim that the constitutional rights of Seema Nayak will be violated if his father is required to return to India for two years is likewise invalid. *Perdido v. I.N.S.,* 420 F.2d 1179 (5th Cir. 1969); *Gonzalez-Cuevas v. I.N.S.,* 515 F.2d 1222 (5th Cir. 1975); *Cervantes v. I.N.S.,* 510 F.2d 89 (10th Cir. 1975); *Enciso-Cardozo v. I.N.S.,* 504 F.2d 1252 (2d Cir. 1974); *Acosta v. Gaffney,* supra; *Hintopolous v. Shaughnessy,* supra; *Silverman v. Rogers,* supra; *Mendez v. Major,* supra.

Finally, even if the court should go so far as to find that INS acted arbitrarily and capriciously in finding that plaintiffs had not shown "exceptional hardship" on the part of Dr. Nayak's citizen son (which the court does not find) the court could only set aside the findings and direct that the application for waiver be forwarded to the Director, International Communication Agency, for a recommendation, (Reorganization Plan No. 2 of 1977, Sec. 7(a)(8); 42 Fed.Reg. 62462; December 13, 1977) and to the Attorney General for final action based on his determination of the public interest. 8 U.S.C. § 1182(e); *Silverman v. Rogers,* 437 F.2d 102, 107 (1st Cir. 1970); *Nwankpa v. Kissinger,* 376 F.Supp. 122, 124 (U.S.D.C. M.D. Ala., E.D., 1974) aff'd 506 F.2d 1054 (5th Cir. 1975).

It is clear that Dr. Nayak has not shown the exceptional hardship contemplated by 8 U.S.C. § 1182(e) and that the administrative decision is in accordance with law.

### CONCLUSION

Defendants' motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied. The Clerk will enter judgment for defendants and mark the case ended and dismissed.

AND IT IS SO ORDERED.