Adolphus Anyiam OKOROHA, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, United States Department of Justice, United States of America, Respondent.

and

Cynthia C. Okoro, Intervenor/Petitioner.

No. 82–1291.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1982.

Decided Aug. 10, 1983.

---

Lauri Steven Filppu and John T. Bannon, Jr., Dept. of Justice, Washington, D.C., Robert Kendall, Jr., Atty., Gen. Litigation and Legal Advice Section, Dept. of Justice, Washington, D.C., for respondent.

Alan H. Kirshen, Omaha, Neb., for petitioner.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Adolphus Okoroha petitions this court for review of a decision of the Board of Immigration Appeals (BIA) finding him deportable on the grounds that he had been convicted of a crime involving moral turpitude and had been sentenced to a term of confinement for one year or more pursuant to 8 U.S.C. § 1251(a)(4) (1976). Okoroha also petitions for review of the BIA's refusal to withhold deportation on the ground of persecution pursuant to 8 U.S.C. § 1253(h)(1) (Supp. IV 1980) and the BIA's failure to consider his claims of hardship relief under various statutory provisions. Although we find Okoroha deportable, for the reasons discussed below, we reverse and remand this case for further consideration of Okoroha's claims of persecution and hardship.

We first discuss Okoroha's deportability. Okoroha is a citizen of Nigeria and first entered this country on March 19, 1973, as a nonimmigrant student. On May 26, 1977, Okoroha was granted permanent resident status. On January 17, 1978, Okoroha was convicted by a jury of possession of stolen mail. 18 U.S.C. § 1708 (1976). The district

court sentenced Okoroha to a term of three years imprisonment but suspended the sentence and placed him on two years probation. After the conviction, the Immigration and Naturalization Service (INS) issued a show cause order charging Okoroha with deportability under 8 U.S.C. § 1251(a)(4). The section provides deportation for any alien who is "convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more."

On March 20, 1979, and October 23, 1979, Okoroha appeared with counsel before an immigration judge, who found Okoroha deportable. Okoroha appealed the immigration judge's finding of deportability to the BIA. The BIA held that possession of stolen mail was a crime of moral turpitude because knowledge that the article of mail had been stolen was an essential element of the offense,[1] citing, *Matter of R,* 6 I. & N. Dec. 772 (BIA 1955) (knowing possession of stolen goods). The BIA further held that a suspended sentence was a sentence to confinement within the meaning of § 1251(a)(4), citing, *Matter of De La Cruz,* 15 I. & N. Dec. 616 (BIA 1976).

■ We are mindful that deportation is a harsh remedy. *Costello v. INS,* 376 U.S. 120, 128, 84 S.Ct. 580, 585, 11 L.Ed.2d 559 (1964). This court, however, must give deference to an agency's interpretation of a statute that it is charged with administering. *INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1980) (per curiam). "The Attorney General and his delegates have the authority to construe [statutory term] 'extreme hardship' narrowly should they deem it wise to do so." *Id.* at 145, 101 S.Ct. at 1031. Here, we find no basis to overturn the BIA's finding that possession of stolen mail is a "crime of moral turpitude," *Lozano-Giron v. INS,* 506 F.2d 1073 (7th Cir.1974) (possession of counterfeit currency), and that a suspended sentence is a "sentence of confinement," *Velez-Lozano v. INS,* 463 F.2d 1305 (D.C.Cir.1972) (suspended sentence).[2]

We now discuss Okoroha's claim of withholding of deportation pursuant to 8 U.S.C. § 1253(h)(1). The section provides that the "Attorney General shall not deport any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion."[3] Okoroha left Nigeria in 1972 during the Nigerian-Biafran conflict. Okoroha had been an officer in the Biafran Air Force. Okoroha first went to Switzerland and then to West Germany, where he was "Secretary of Biafra In-Exile" and active in the Biafran relief movement and in publishing anti-Nigerian literature.

Okoroha applied for a withholding of deportation, alleging that if he returned to Nigeria he would be subject to persecution on account of his membership in the Ibo

---

1. Title 18 U.S.C. § 1708 provides in pertinent part:

    Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

    Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. The court in *Velez-Lozano v. INS* explained that "[t]he essential element with reference to the [Immigration] Act is the imposition of the sentence rather than the actual serving of the sentence." 463 F.2d at 1307.

3. Section 1253(h)(1) was amended by the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102 (1980). Prior to the amendment, the section provided that the "Attorney General is authorized to withhold deportation of any alien within the United States to any country in which his opinion the alien would be subject to persecution on account of race, religion, or political opinion." 8 U.S.C. § 1253(h)(1) (1976). A leading treatise has stated that "[t]he 1980 Act's conversion of the determination from a discretionary to a mandatory one ... doubtless requires modifications of previous concepts." 1A C. Gordon & H. Rosenfeld, *Immigration Law and Procedure* § 5.7(b) (Supp. March 1983). *See* notes 6 and 7 *infra.*

tribe, a minority ethnic group, his religion,[4] and his involvement in the Biafran movement. Okoroha stated in his application and testified at his hearing that he feared he would be murdered if he returned to Nigeria because of his anti-government activities. He testified that his mother and father had been murdered and that his family home had been burned in retaliation for his activities. In support of his allegations, he submitted various documents relating to the Nigerian Civil War, the Biafran movement, and the political unrest following the cessation of hostilities. Okoroha also submitted letters from townspeople warning him not to return to Nigeria. The immigration judge reviewed Okoroha's application, the supporting documentation, his testimony, and a United States Department of State letter[5] and concluded that Okoroha failed to carry his burden of establishing a legitimate fear of persecution.

Okoroha appealed the immigration judge's refusal to withhold deportation to the BIA. The BIA held that Okoroha failed to establish a "clear probability of persecution" because he had not substantiated his allegations with objective evidence, as was required by *Matter of Dunar,* 14 I. & N. Dec. 310, 316 (1973).[6]

■ We recognize that our scope of review of decisions to withhold deportation is limited.[7] However, in this case, we are unable to review the BIA's finding that Okoroha did not meet his burden of proof of persecution because none of the documents that Okoroha submitted to the immigration judge are contained in the certified tran-

4. On appeal Okoroha has abandoned his claim of religious persecution. Brief for Petitioner at 18.

5. On the basis of the information submitted to the State Department, the Department believed that Okoroha had not established a "well-founded fear of persecution." The State Department letter noted that conditions which caused Okoroha to flee in 1972 had changed; that the "Biafran war was a thing of the past"; and that Nigeria had made efforts to reintegrate Biafrans into Nigerian society. The letter also noted that Okoroha was no longer involved in anti-government activity and that he had travelled to Nigeria for two weeks in 1977. From the record before this court we are unable to determine what information the State Department reviewed in arriving at its conclusion. Several circuits have disapproved of INS reliance on unsubstantiated State Department letters. "Such letters from the State Department do not carry the guarantees of reliability ... No hearing officer or court has the means to know the diplomatic necessities of the moment, in the light of which the statements must be weighed." *Kasravi v. INS,* 400 F.2d 675, 697 n. 1 (9th Cir.1968). *Accord Zamora v. INS,* 534 F.2d 1055, 1061–63 (2d Cir.1976); *Berdo v. INS,* 432 F.2d 824, 844 (6th Cir.1970).

6. As we noted in *Minwalla v. INS,* 706 F.2d 831 (1983) at 835 n. 2, the Second Circuit has held that the 1980 amendment to § 1253(h)(1), *see* note 3 *supra,* lessened an alien's burden of proof of persecution. *Stevic v. Sava,* 678 F.2d 401 (2d Cir.1982), *cert. granted,* — U.S. —, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). In *Stevic* the court declined to detail what an alien's burden of proof would be but held that the burden would "be far short of a 'clear probability' that an individual will be singled out for persecution." *Id.* at 409. The Sixth Circuit has followed *Stevic* and found that "the testimony of the individual *and* documents offered indicating a repressive environment and suggesting that petitioner *not* return to [her homeland] is sufficient to bring her risk within the tenor and spirit of the new provisions of the Act." *Reyes v. INS,* 693 F.2d 597, 600 (6th Cir.1982) (emphasis in original). *See also* Note, *Persecution Abroad as Grounds for Withholding Deportation: the Standard of Proof and the Role of the Courts,* 6 Fordham Int'l L.J. 100 (1982) (favorable treatment of *Stevic*). The Third Circuit has declined to follow *Stevic,* holding that the 1980 amendment did not alter an alien's burden of proof. *Rejaie v. INS,* 691 F.2d 139 (3d Cir.1982). On appeal the INS urges that this court reject *Stevic.* Because the evidence of persecution is incomplete in this case, we need not decide whether the 1980 amendment alters an alien's burden of proof.

7. Before the 1980 amendment, judicial review of decisions to withhold deportation was "limited to assessment of the record to insure that the decision of the Attorney General [was] not 'arbitrary, capricious or an abuse of discretion.'" *Shkukani v. INS,* 435 F.2d 1378, 1380 (8th Cir.) (citations omitted), *cert. denied,* 403 U.S. 920, 91 S.Ct. 2237, 29 L.Ed.2d 698 (1971). The Second and Ninth Circuits have held that the 1980 amendment changed the scope of judicial review from abuse of discretion to substantial evidence. *Stevic v. Sava,* 678 F.2d at 409; *McMullen v. INS,* 658 F.2d 1312 (9th Cir.1982). Again, because of the incomplete record in this case, we do not decide whether the 1980 amendment alters judicial scope of review.

script on appeal. Furthermore, although it is not apparent from the BIA's written decision, on appeal the INS concedes that these "documents were not physically before the [BIA]." Brief for Respondent at 15. The agency, not the alien, is responsible for preparing the record on appeal. *See generally* 1 C. Gordon & H. Rosenfeld, *Immigration and Nationality Law* § 1.10(d) (rev.ed. 1982).[8] Here, this court has no choice but to remand this case to the INS for inclusion of Okoroha's documentation into the record on appeal. *See Carr v. Coomey,* 454 F.Supp. 367, 368 (D.Mass.1978) (remand because "so-called certified administrative record of the Immigration and Naturalization Service [was] so incomplete as to establish nothing"). *See also* J. Wasserman, *Immigration Law and Practice* 398 (3d ed. 1978) ("When the administrative record is incomplete or inaccurate, remand by the courts to the immigration service is considered appropriate.") (footnote omitted).

The BIA must then carefully review all of Okoroha's supporting documentation in light of his testimony and again evaluate his persecution claim. In order for this court to review the BIA's decision, the BIA must expressly set forth the evidence it considered and the basis of its decision. As the Fifth Circuit has stated in a related context (BIA's consideration of discretionary hardship relief):

> The Board's [BIA's]. decision must reflect that it has meaningfully addressed and reached a reasoned conclusion on the alien's specific assertions of hardship that are based on evidence. The Board has a duty "to 'give reasons which show that it has properly considered the facts which bear on its decision.'" The reasons given by the Board of denial of relief must "reflect[ ] consideration of" the relevant evidence of claimed hardship. As the re-

viewing Court, we must "make our decision," concerning the factors considered by the Board, "based on the Board's own articulation of its actions," rather than on assumptions.

*Ramos v. INS,* 695 F.2d 181, 188 (5th Cir. 1983) (citations omitted). The court explained that "[t]o affirm on the theory that the Board necessarily considered whatever petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decision, eliminating any guarantee of rationality." *Id., citing Santana-Figueroa v. INS,* 644 F.2d 1354, 1357 (9th Cir. 1981).

On remand if the INS cannot locate the documentation that Okoroha originally submitted to the immigration judge, then the INS must afford Okoroha an opportunity to submit new documentation and again appear before an immigration judge on his claim of persecution.

■ In addition, Okoroha claims that the BIA failed to review the immigration judge's denial of hardship relief under a variety of statutory provisions. Okoroha is married to an American citizen and is the father of an American child born in April 1975. Okoroha's wife is confined to a mental institution and he alleges he is primarily responsible for the care of his young child. The BIA responds that it did not review the denial of hardship relief because Okoroha did not appeal the judge's denial to the BIA. We disagree and believe that Okoroha sufficiently apprised the BIA of his hardship claims. Okoroha argued to the BIA that his deportation would result in the de facto deportation of his wife and daughter. In *Mendez v. Major,* 340 F.2d 128 (8th Cir.1965), we rejected the argument that deportation of an alien would result in the unconstitutional de facto deportation of his dependents. This court, however, considered the argument in the context of a

---

8.  The regulations provide:

> If an appeal is taken from a decision, as provided in this chapter, *the entire record of the proceeding shall be forwarded to the Board by the officer of the Service having administrative jurisdiction over the case* upon timely receipt of the briefs of the par-

ties, or upon expiration of the time allowed for the submission of such briefs.

8 C.F.R. § 3.5 (1982) (emphasis added). *See also Matter of Charles,* 16 I. & N. 241 (BIA 1977) (BIA remand to immigration judge to correct deficiencies in the record and allow alien another hearing).

hardship claim. In *Mendez* we stated that "Congress has the power to determine the conditions under which an alien may enter and remain in the United States, ... even though the conditions may impose a certain amount of *hardship* upon an alien's wife and children." *Id.* at 132 (citations omitted, emphasis added). "The relevance of close family ties seems implicit in the statutory provision that the 'extreme hardship' requirement [8 U.S.C. § 1254(a)(1)] may be met by showing such hardship to the citizen or legal resident spouse, parent, or child of the alien, even though no such hardship would result directly to the alien himself." *Ramos v. INS,* 695 F.2d at 186 (footnote omitted). Therefore, on remand the BIA must also carefully review and evaluate Okoroha's hardship claims.[9] *Id.* at 188–90.

Accordingly, we affirm in part and reverse in part and remand to the BIA for further proceedings consistent with this opinion.

FLOYD R. GIBSON, concurring in part and dissenting in part.

I concur in the majority's decision not to overturn the BIA's finding that Okoroha is deportable on the grounds that he had been convicted of "a crime involving moral turpitude." I respectfully dissent from the remand for further proceedings on Okoroha's persecution and hardship claims. I would affirm the BIA's order of deportation.

First, the record before us is sufficient to support the BIA's finding that Okoroha failed to show by objective evidence a "clear probability[1] of persecution" on

account of his membership in the Ibo tribe and his involvement in the Biafran movement in the late 1960's and early 1970's. Although we do not have the articles Okoroha allegedly wrote dealing with the Nigerian Civil War in the late 60's and early 70's, or the letters from friends indicating Okoroha should not return to Nigeria, this deficiency does not warrant a remand. The insignificance of these letters and articles is revealed in the hearing transcript and the opinion of the immigration judge. In his testimony Okoroha admitted that his last expressed opposition to the Nigerian government was in 1973, that he is not presently engaged in activities hostile to the Nigerian government, that the Nigerian Civil War articles he wrote did not include his name, that he had visited Nigeria for two weeks in 1977 without incident, and that he had no problem getting his Nigerian passport renewed in 1977.

Furthermore, Okoroha's claims regarding persecution for his earlier anti-government activities were vague, conclusory, and inconsistent with other evidence in the record. Specifically emphasized by the immigration judge was a State Department letter concluding that Okoroha did not have a well-founded fear of persecution. This letter revealed that the tumultuous conditions in Nigeria that prompted Okoroha's departure in 1972 have significantly changed and that the Nigerian government has made and is making "extraordinary efforts" to reintegrate Biafrin sympathizers into all phases of society, including the government. Though the majority summarily discounts

---

**9.** Concededly, as the immigration judge found and the dissent points out, Okoroha may be ineligible for hardship relief under 8 U.S.C. §§ 1254(a) & (e) and 1182(c). However, the immigration judge also denied Okoroha "any type of relief within the jurisdiction of the Immigration Judge." On remand the BIA should identify the specific grounds of the denial of hardship relief.

**1.** I am inclined to agree with the court in *Rejaie v. INS,* 691 F.2d 139, 142–46 (3d Cir.1982) that the 1980 Refugee Act, modifying 8 U.S.C. § 1253(h), was not designed to lessen the standard that the alien must meet in order to avoid deportation on the ground of political or reli-

gious persecution. Admittedly, this is a close question that the Supreme Court must ultimately resolve. *See Stevic v. Sava,* 678 F.2d 401 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). However, assuming *arguendo* that by defining refugee as one who has a "well-founded fear of persecution," (*See* 8 U.S.C. § 1101(a)(42)(A)), Congress intended to establish a lesser burden of proof than the "clear probability of persecution" standard, the findings of the BIA and the immigration judge, taken in their entirety, suggest that Okoroha failed to support any legitimate fear of persecution. (*See* page 9 of Decision of the Immigration Judge).

this letter as unsubstantiated (*supra*, p. 383, footnote 5), it appears consistent with Okoroha's own testimony that in 1977 he went to Nigeria for two weeks and returned safely and that he had no difficulty in obtaining a renewal of his Nigerian passport in 1977. And, as the Board noted, Okoroha admitted that the Nigerian government was not responsible for the deaths of his parents.

I cannot agree with the majority that the Board, on review of an immigration judge's decision finding an alien deportable, must demonstrate that it considered every single piece of evidence proffered by an alien, no matter how trivial and self-serving. All that is required is that the Board has adequately set forth the relevant evidence it considered and the reasons for its decision. *Ramos v. INS*, 695 F.2d 181, 188 (5th Cir. 1983). In any event, the Board did consider the "missing documents" to the extent that the content of such documents was reflected by Okoroha's testimony during the administrative hearing. The immigration judge appropriately discounted these documents in view of other evidence in the record militating against Okoroha's persecution claim.

Secondly, I disagree with the majority's make-weight contention that the BIA erred in failing to evaluate Okoroha's "extreme hardship" claims. The immigration judge set forth the specific grounds for the denial of Okoroha's only three statutory hardship claims. First, the immigration judge found that Okoroha was ineligible for hardship relief under § 1254(a) because he had not established good moral character for the required time period. Second, the immigration judge denied his claim for voluntary departure under § 1254(e) because that provision excludes relief for aliens, such as Okoroha, who have been found deportable under § 1254(a)(1). Third, the judge found Okoroha ineligible for relief under 8 U.S.C. § 1182(c) because he had not met the seven-

year permanent residence requirement of that section.

In his statement of reasons for appeal to the BIA, Okoroha failed to challenge these findings of ineligibility under §§ 1254(a) & (e) and 1182(c), and instead contended that deportation of him would "as a matter of law result in de facto deportation of his U.S.C. (sic) wife and child in violation of the INA regulations and the United States Constitution." I cannot agree with the majority that this statement sufficiently apprised the Board of Okoroha's appeal of the immigration judge's finding of ineligibility for hardship relief. In any event, the immigration judge appropriately disposed of the only three statutory claims which Okoroha now raises on this appeal. First, as to the claim under § 1254(a), I agree with the immigration judge that Okoroha has not met the eligibility proviso of § 1254(a)(2), which requires "physical presen[ce] in the United States for not less than ten years following the commission of an act ... constituting a ground for deportation ...." [2] Here the acts which constituted the grounds for deportation—*i.e.*, the acts constituting "a crime involving moral turpitude" (8 U.S.C. § 1251(a)(4)—occurred in 1977 and Okoroha was convicted for such acts in 1978. Similarly, as the immigration judge found, Okoroha is ineligible for voluntary departure under § 1254(e) because he was found deportable under § 1254(a)(1). Finally, as noted by the immigration judge, Okoroha failed to meet the seven-year permanent residence requirement for relief under § 1182(c).

---

**2.** The ten-year continuous presence require-ment of § 1254(a)(2) applies instead of the sev-en-year requirement of § 1254(a)(1) because

Okoroha was found deportable under § 1251(a)(4). *See* 8 U.S.C. § 1254(a)(2).