437 F.2d 102
 Charles A. SILVERMAN and Ulku Silverman, Plaintiffs, Appellees,
v.
William P. ROGERS, Secretary of State of the United States, John N. Mitchell, Attorney General of the United States, Raymond F. Farrell, Commissioner of Immigration and Naturalization, and J. A. Hamilton, Jr., District Director of the Immigration and Naturalization Service, Department of Justice, Boston, Massachusetts, Defendants, Appellants.
 No. 7687.
 United States Court of Appeals First Circuit.
 December 30, 1970.
 
 George W. Masterton, Atty., Department of Justice, with whom Herbert F. Travers, Jr., U. S. Atty., Mary M. Brennan, Asst. U. S. Atty., Will Wilson, Asst. Atty. Gen., and Paul C. Summitt, Atty., Department of Justice, were on the brief, for appellants.
 Herbert S. Swartz, Brookline, Mass., for appellees.
 Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.
 McENTEE, Circuit Judge.
 
 
 1
 The principal issue raised by this appeal is one of statutory construction. The relevant facts are not in dispute and may be stated briefly as follows. In July 1964 Ulku Gurkan, an unmarried Turkish citizen, came to the United States as an exchange visitor[1] under the auspices of the Agency for International Development (AID)[2]. Her purpose in coming here was to study psychiatric nursing in order to qualify as an instructor at the Florence Nightingale School of Nursing in Istanbul. She obtained several extensions of her original visa which enabled her to complete her studies and obtain a master's degree in psychiatric nursing from Boston University. The last extension expired on January 30, 1969. On March 9, 1969, she married Charles A. Silverman, an American citizen, and on April 24th of the same year applied to the Immigration and Naturalization Service (INS) for a waiver of the statutory two-year foreign residence requirement which normally she would have to meet before being allowed to return to the United States. 8 U.S.C. § 1182(e) (1964). In her application for the waiver she stated that to require her to leave this country would impose exceptional hardship on her husband because of his ill health. The relevant statutory waiver provision upon which she relies reads as follows:
 
 
 2
 "Provided further, That upon the favorable recommendation of the Secretary of State, pursuant to the request of an interested United States Government agency, or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest; * * *" 8 U.S.C. § 1182(e) (1964).
 
 
 3
 Despite strenuous objection from AID, the INS found that the applicant's compliance with the two-year foreign residency requirement would impose exceptional medical hardship on her new husband and requested that the Secretary of State recommend whether the waiver should be granted.[3] The Secretary recommended that the waiver not be granted.[4] On December 11, 1969, INS notified Mrs. Silverman, inter alia, that both the State Department and INS had carefully reviewed the facts in her case; that the State Department had recommended against granting her waiver; that accordingly her application had been denied and that she must arrange to leave the United States on or before a specified date.
 
 
 4
 On January 30, 1970, the Silvermans brought the instant suit to enjoin the commencement of deportation proceedings against Mrs. Silverman and for a judgment instructing the defendants to issue the waiver. They argued that under the statute only the INS was authorized to make the decision in hardship waiver applications and that the Secretary of State's recommendation was a mere matter of form. Alternatively, they contended that to deny Mrs. Silverman residency in the United States would deprive both plaintiffs of their right to liberty under the Fifth Amendment. The defendants moved for dismissal of the complaint or in the alternative for summary judgment. The district court took jurisdiction of the case[5] and decided for the plaintiffs, granting a preliminary injunction on February 25, 1970, 309 F.Supp. 570, and a final injunction on March 9, 1970. The Government appealed.
 
 
 5
 The district court construed the statutory waiver proviso set out above "to provide that decision by the Attorney General whether to waive the foreign residence requirement may be based either upon the favorable recommendation of the Secretary of State or upon that of the [INS] Commissioner after determination of exceptional hardship." The court then went on to say,
 
 
 6
 "This construction seems to be required by the plain language of [the proviso], especially the punctuation and the word `of' as underlined in the following excerpt, `That upon the favorable recommendation of the Secretary of State, pursuant to the request of an interested United States Government Agency, or of the Commissioner of Immigration and Naturalization after he has * * *.'" Silverman v. Rogers, 309 F.Supp. 570, 574 (D. Mass.1970).
 
 
 7
 The court noted that its decision was "at odds" with regulations implementing the exchange-visitor program[6] but felt that its interpretation guarded "the interest obviously underlying the particular proviso, to wit, protection of a United States citizen against exceptional hardship, which interest ordinarily conflicts with considerations of foreign policy of prime concern to the Secretary of State."[7]
 
 
 8
 We start with the thought that in spite of some awkwardness in its structure, the statute lends itself to a construction unfavorable to appellees. It also lends itself to a construction favorable, but we cannot agree with the district court's view that this latter is "required by the plain language." 309 F. Supp. at 574. The question is, which clause modifies which. The ultimate provision for the waiver of the two-year foreign residence requirement may be read to be conditioned upon, (a) the favorable recommendation of the Secretary of State pursuant to the request of an interested United States Government agency, or (b) the request of the Commissioner of Immigration and Naturalization after he has determined hardship. However, it is equally possible to read the statute as authorizing waiver conditioned upon the recommendation of the Secretary of State when he (a) has received a request of a government agency, or (b) has received a request of the Commissioner after he had determined hardship.
 
 
 9
 In the light of this ambiguity it becomes important to examine the legislative history. The proviso in question was added by the 1961 revision of the statute. It was derived from a then-existing provision which read,
 
 
 10
 "upon request of an interested Government agency and the recommendation of the Secretary of State, the Attorney General may waive such two-year period of residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest." Act of June 4, 1956, ch. 356, 70 Stat. 241.
 
 
 11
 Although the 1956 statute did not make any provision for hardship cases, the State Department's regulations took them into account. 22 Fed.Reg. 10840 (1957).[8] Between June 1956 and the end of 1960, the State Department approved 2104 waiver applications out of 2674 such applications received, and 1812 of those approved were hardship cases.[9] This liberal policy[10] was strongly disapproved by Subcommittee No. 1 of the House Committee on the Judiciary.[11] The subcommittee stated:
 
 
 12
 "It is believed to be detrimental to the purposes of the program and to the national interests of the countries concerned to apply a lenient policy in the adjudication of waivers including cases where marriage occurring in the United States, or the birth of a child or children, is used to support the contention that the exchange alien's departure from this country would cause personal hardship." H.R.Rep. No. 721, 87th Cong., 1st Sess. 121 (1961) (emphasis in original).
 
 
 13
 In light of this, the subcommittee proposed language in place of the then-existing proviso, which is substantially similar to that finally adopted, to wit:
 
 
 14
 "Provided further, That upon the favorable recommendation of the Secretary of State, pursuant to the request of a Government agency desiring to obtain the alien's services for the prospective benefit to the national defense, economy, welfare or cultural interest, or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest." Id. at 122.
 
 
 15
 The House Committee on Foreign Affairs specifically adopted this suggestion for the 1961 bill. 1961 U.S.Code Cong. & Admin.News, p. 2773. In particular, it noted that it was reenacting and amplifying the earlier proviso — and it also noted that it made only one "important change" in the existing law, namely, to allow the Secretary of State to approve variances in the place where the two-year foreign residence requirement could be fulfilled. Id. at 2774. The House approved the committee language as reported. 107 Cong.Rec. 18281 (1961).
 
 
 16
 The Senate version would have kept the language of the then-existing proviso, Act of June 4, 1956, ch. 356, 70 Stat. 241. It should be noted that the Senate report on the bill stated that "The waiver is subject to a request by an interested agency of the Federal Government and recommendation by the Secretary of State to the Attorney General." S. Rep. No. 372, 87th Cong., 1st Sess. 19 (1961) (emphasis added). When the Senate received the House version, it voted to substitute the language of its own bill for the House bill and send the bill to conference. 107 Cong.Rec. 18515 (1961). The language of the then-existing proviso (as readopted by the Senate) and the new version drafted by Subcommittee No. 1 of the House Committee on the Judiciary were combined to make the final version. In its conference report, the House managers said:
 
 
 17
 "[The House bill] reenacted and amplified [Act of June 4, 1956, ch. 356, 70 Stat. 241] but contained one modification, namely, the requirement of the finding by the Secretary of State that the 2 years' residence abroad of an exchange alien, if not occurring in the country from which he came to the United States, is in accord with the basic purpose of the exchange program. The Senate amendment contained language similar in intent but different in wording. The Senate conferees accepted the House language with amendments." 1961 U. S.Code Cong. & Admin.News, pp. 2779-2780 (emphasis added).
 
 
 18
 We conclude, therefore, that the intent of both the House and Senate versions of the 1961 proviso now in 8 U.S.C. § 1182(e) (1964), supra, was the same, namely, to include the Secretary of State in the hardship waiver process. Indeed, it would have been illogical to reduce the number of agencies wielding a veto, given the expressed purpose of Subcommittee No. 1 to grant fewer hardship waivers.
 
 
 19
 Weight must also be given to the regulations, which have consistently given the Secretary a decisive voice in all waivers. See note 3, supra; 35 Fed. Reg. 5958 (1970), 1970 U.S.Code Cong. & Admin.News, p. 1132. "In case of ambiguity it is appropriate to give weight to the view of the body entrusted to administer the act." Massachusetts Trustees of Eastern Gas and Fuel Associates v. United States, 312 F.2d 214, 222 (1st Cir. 1963), aff'd, 377 U.S. 235, 84 S.Ct. 1236, 12 L.Ed.2d 268 (1964); accord, American Power & Light Co. v. SEC, 141 F.2d 606, 621 (1st Cir. 1944), aff'd, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946). Finally, we note that Congress has not seen fit to question the administrative practice. See 8 U.S.C.A § 1182(e) (1970), amending 8 U.S.C. § 1182(e) (1964); 1970 U.S.Code Cong. & Admin.News, p. 874. We therefore resolve the statutory ambiguity in favor of giving the Secretary a veto over hardship waiver applications.
 
 
 20
 We turn now to plaintiff's alternative argument, that to allow the government to refuse Mrs. Silverman the right to reside in the United States would deprive both plaintiffs of their constitutional rights. We see no merit in this contention. Mrs. Silverman enjoys no special right to remain in this country, it being within congressional discretion to place conditions on her right of entry or continued residence. Harisiades v. Shaughnessy, 342 U.S. 580, 584-591, 72 S.Ct. 512, 96 L.Ed. 586 (1952); Perdido v. Immigration and Naturalization Service, 420 F.2d 1179, 1181 (5th Cir. 1969). Plaintiffs also argue that the government's action here is destroying their marriage. Even assuming that the federal government had no right either to prevent a marriage or destroy it, we believe that here it has done nothing more than to say that the residence of one of the marriage partners may not be in the United States. It does not attack the validity of the marriage. Swartz v. Rogers, 103 U.S. App.D.C. 1, 254 F.2d 338, 339, cert. denied, 357 U.S. 928, 78 S.Ct. 1373, 2 L. Ed.2d 1372 (1958); cf. Papageorgiou v. Esperdy, 212 F.Supp. 874, 877 (S.D.N. Y.1963); see also Mendez v. Major, 340 F.2d 128, 132 (8th Cir. 1965). In the instant case at least one and presumably both of the parties were well aware before their marriage that Mrs. Silverman had agreed to return to Turkey. Under these circumstances, we see nothing unfair in permitting the government to carry out its policies.
 
 
 21
 Reversed and remanded with directions to the district court to dismiss the complaint.
 
 
 
 Notes:
 
 
 [1]
 She had J-1 visa status, so-called, under 8 U.S.C. § 1101(a) (15) (J) (1964)
 
 
 [2]
 AID is an agency in the United States Department of StateSee 22 C.F.R. ch. II (1970).
 
 
 [3]
 See 22 C.F.R. §§ 63.6(a), and (f), 63.7 (1970); 8 C.F.R. § 212.7(c) (1970).
 
 
 [4]
 In reply to INS, the Secretary stated, "we have had extended discussions with the Agency for International Development and the Turkish Government concerning the training given to Mrs. Silverman. The Turkish Government believes her services are indispensable, and a position is being held open for her at the Florence Nightingale Nursing Home in Istanbul. In addition, she has signed a bond which obligates her to serve for a period of ten years in Turkey after finishing her training here. If she does not return, those who signed as guarantors for the bond will be required by the Turkish Government to pay approximately $40,000 as compensation."
 
 
 [5]
 5 U.S.C. §§ 701-706 (Supp. V, 1970); Immigration and Naturalization Service v. Stanisic, 395 U.S. 62, 68 n. 6, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); Cheng Fan Kwok v. Immigration and Naturalization Service, 392 U.S. 206, 210, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); Butterfield v. Immigration and Naturalization Service, 133 U.S.App.D.C. 135, 409 F.2d 170, 173 (1969)
 
 
 [6]
 The court saw a conflict between its opinion and 22 C.F.R. §§ 63.6 and 63.7 (1970), but not with 8 C.F.R. § 212.7(c) (1970). Others commenting on the waiver proviso in the instant case also appear to disagree with the district courtSee Mendez v. Major, 340 F.2d 128, 130 (8th Cir. 1965) (dictum), affirming 226 F. Supp. 364, 366 (E.D.Mo.1963) (dictum); Gras v. Beechie, 221 F.Supp. 422, 423 (S.D.Tex.1963) (dictum); Matter of Tran, 11 I. & N.Dec. 395 (Dist.Dir., 1965); contra, Samala v. Immigration and Naturalization Service, 336 F.2d 7, 9 n. 4 (5th Cir. 1965) (dictum); see also 1 Gordon & Rosenfield, Immigration Law and Procedure § 6.8h(3) (1970) (ambiguity noted).
 
 
 [7]
 309 F.Supp. at 574. We note in passing that the hardship provisions apply not only to a spouse or child who is an American citizen, but also to an alien spouse or child who is admitted for permanent residence. 8 U.S.C. § 1182(e) (1964)
 
 
 [8]
 The hardship dealt with in the regulations was that of the exchange visitor and not that of his spouse or child as is the case under the instant statute
 
 
 [9]
 H.R.Rep.No.721, 87th Cong., 1st Sess. 81 (1961). Only 499 applications had been refused during that period and 71 were still pending at the end of the period
 
 
 [10]
 The State Department referred to its policy as a "liberal attitude." H.R.Rep. No.721,supra at 33. But the rare refusal of waiver was made "when the foreign government strongly desires the individual's return abroad." Id.
 
 
 [11]
 H.R.Rep.No.721,supra at 121 (1961); see also id. at 88 (speech of Congressman Walter, chairman of the subcommittee) and id. at 121 (remarks adopted by whole subcommittee).