Omari ANSONG, Petitioner,

v.

**DISTRICT DIRECTOR OF IMMIGRATION, Respondent.**

Civ. No. 84–0274–P.

United States District Court, D. Maine.

Oct. 25, 1984.

Alexander MacNichol, Nisbet, MacNichol & Ludwig, South Portland, Maine, for petitioner.

Kevin A. Gaynor, Asst. U.S. Atty., Portland, Maine, for respondent.

### MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

GENE CARTER, District Judge.

#### I.

This matter is before the Court on Petitioner's Petition for Writ of *Habeas Corpus* filed on September 6, 1984. Hearing was had thereon on September 18, 1984. The petition sets out that Petitioner is formerly a citizen of Ghana and is now domiciled in South Norwalk, Connecticut. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 2241(c)(1). It is further alleged that Petitioner entered the United States in 1980 at New York, New York on a legal visa. The petition alleges that on

April 18, 1984, Petitioner filed a complaint with the Immigration and Naturalization Office of Professional Responsibility, which, it is alleged, had "the effect of suspending any efforts to deport Petitioner pending investigation of said complaint." Petition for Writ of *Habeas Corpus*, ¶ 5. It is alleged that the Petitioner received notification of deportation to take place on May 8, 1984, "but asserting his statutory right to suspension of deportation action pending his complaint, failed to comply." *Id.*, ¶ 6. Further, it is alleged that the subject complaint has not been acted upon by either local immigration authorities or the Central Office of the Immigration and Naturalization Service. *Id.*, ¶ 7.

The petition asserts that Petitioner "was lawfully married to his wife, Barbara, who is a United States citizen, in June of 1984, and claims residence through said Barbara Ansong." *Id.*, ¶ 8. It is alleged that Petitioner is being illegally detained by the Respondent District Director of Immigration and Naturalization Service at the Cumberland County Jail, Portland, Maine. The Petitioner seeks hearing on the petition, a stay of execution of any order of deportation pending such hearing, and ultimately that "the legality and propriety of any aforesaid order of deportation and of the confinement of Omari Ansong pursuant thereto, be inquired into at such hearing, and if such confinement is thereby deemed to be illegal, that Omari Ansong be discharged from the custody of the Respondent." *Id.* at 3–4.

## II.

The record in this case includes the record of the administrative and quasi-judicial deportation proceedings before the Immigration and Naturalization Service. Respondent's Exhibit # 3.[1] The Court has carefully and exhaustively reviewed and considered this quite voluminous record. The entire record in this case reflects that Petitioner did in fact enter, according to the records of the Immigration and Naturalization Service, the United States in 1980 on a legal visa. Thereafter, on November 22, 1982, Petitioner was served with an order to show cause by the Immigration and Naturalization Service, which required him to appear before an immigration judge on December 8, 1982, at 11:00 A.M. "and show cause why you should not be deported from the United States on the charge(s) set forth above." On January 12, 1983, Petitioner received a hearing on the order to show cause before an Immigration Judge and was found deportable at that time. Petitioner was permitted to depart voluntarily from the United States on or before February 12, 1983, and the Immigration Judge entered at that time an alternate order providing that Petitioner be deported if he failed to leave the United States within the time specified.

Petitioner appealed the decision of the Immigration Judge to the Board of Immigration Appeals, which on May 4, 1983, dismissed the appeal. Petitioner filed a petition for review of the decision of the Board of Immigration Appeals with the First Circuit Court of Appeals, and that petition for review was denied by the Court of Appeals on March 1, 1984. Petitioner then filed a motion to reopen and reconsider his deportation proceedings before the Board of Immigration Appeals. The Service opposed the motion and it was denied by the Board of Immigration Appeals on May 8, 1984. Thereafter, on July 10, 1984, a second petition for review from the May 8, 1984, action of the Board of Immigration Appeals was dismissed by the First Circuit Court of Appeals. On August 1, 1984, the Court of Appeals dismissed a third petition for review filed by Petitioner.

---

**1.** Respondent's Exhibit # 3 was offered at the hearing on September 18, 1984. Petitioner's counsel asked for time to review the exhibit, since he had not previously seen it, before indicating whether there was objection on the Petitioner's part to its admission into evidence. It was agreed that the Court would defer its ruling on admissibility of the exhibit to afford Petitioner's counsel the desired opportunity. Petitioner's counsel subsequently advised the Court that he had no objection to the admission of the exhibit into evidence. Respondent's Exhibit # 3 is admitted in evidence.

On June 3, 1983, the Director of the Office of Professional Responsibility determined that a complaint filed by Petitioner alleging, *inter alia,* inappropriate conduct of immigration officials did not come within the purview of that office, and he accordingly referred the complaint to the Associate Commissioner of the Immigration and Naturalization Service. On August 23, 1983, the Associate Commissioner advised Petitioner that no evidence of improper Immigration and Naturalization Service action had been found.

A second letter of complaint was filed with the Director of the Office of Professional Responsibility by a relative of Petitioner. This complaint was also referred to the Associate Commissioner, who on September 15, 1983, advised the filing relative that no evidence of improper Immigration and Naturalization Service action was found in the case of Petitioner.

Although Petitioner claims to have filed a third complaint on or about April 18, 1984, the Court finds that no such complaint was in fact filed, nor was any pending on April 25, 1984, the date of issuance of the warrant of deportation. *See infra.* When the warrant of deportation was issued, on April 25, 1984, Petitioner was advised to report ready for deportation on May 8, 1984. Petitioner, however, failed to report for deportation on May 8, 1984, and the Service remained unaware of his whereabouts.

Petitioner filed a suit in the United States District Court at Bangor, Maine on May 7, 1984, said suit being against officials of the Service and officials of the University of Maine at Orono. In addition, he filed a request for writ of *habeas corpus* on May 17, 1984. Petitioner was taken into custody on the outstanding warrant of deportation on September 5, 1984. Thereafter, the Petition for Writ of *Habeas Corpus* presently before the Court was filed on September 6, 1984.[2] Petitioner's Petition for Writ of *Habeas Corpus* raises two issues: (1) whether Plaintiff is entitled to a suspension of the outstanding order of deportation because the service was prohibited by the force of its own internal Operations Instruction, § 287.10(f)(5) (Federal Immigration Law Reporter, ¶ 5520 (1983), from taking any action "to enforce the departure from the United States" of the Petitioner "until a preliminary inquiry or an investigation of the matter has been completed."[3] *Id.;* and (2) whether Petitioner is entitled to suspension of the order of deportation because of his claim of citizenship by way of his marriage to the witness Barbara Ansong.

### III.

The Court finds as fact that the complaint personally filed by Petitioner with the Office of Professional Responsibility was filed during 1983. The Court further

**2.** Since the petition was heard, the Court has been advised that the First Circuit Court of Appeals has issued, on October 3, 1984, its memorandum and order denying the Petitioner's Motion to Vacate the Court of Appeals' August 1, 1984, decision dismissing Petitioner's earlier Petition for Review. In reaching its decision on this petition, the Court has given no consideration or weight whatever to that action of the Court of Appeals. It is immaterial to the resolution of the issues which the Court perceives to be generated by the pending petition. Further, it is without probative value for reasons put forth by Petitioner's counsel. *See* Letter of Petitioner's Counsel dated October 17, 1984, at ¶¶ 3–4.

**3.** The petition does not cite or quote from the Operations Instruction in question. Petitioner's formal Reply to United States' Response to Petition for Writ of *Habeas Corpus* does, however, cite and rely upon the Operations Instruction, and there is appended to the Reply a copy of it. The Court finds it plain that Petitioner's contention is that the provisions of § 287.10(f)(5) of the Operations Instruction have the force of law and prohibited enforcement of the deportation warrant of April 25, 1984.

As stated in the Reply and in argument to the Court, Petitioner's argument is overly broad. Counsel asserts that the language of the Operations Instruction prevents enforcement while the complaint made under it is "pending." Reply, at 4. The Operations Instruction specifically speaks of a stay of enforcement only "until a preliminary inquiry or an investigation is completed." § 287.10(f)(5). The Court has stated the issue in the narrow form that it feels is appropriate in view of the content of the pertinent provision of the Operations Instruction.

finds that that complaint was transferred to the Associate Commissioner of the Immigration and Naturalization Service, Andrew J. Carmichael, on June 3, 1983, by the Director of the Office of Professional Responsibility. The complaint was fully acted upon, and the Associate Commissioner advised Petitioner on August 23, 1983, that no evidence of improper Immigration and Naturalization Service action was found. The record does not reflect that Petitioner sought any reconsideration or further review of the Associate Commissioner's action on that complaint.

It is further found that a second letter of complaint directed to the Office of Professional Responsibility was filed, purportedly on behalf of Petitioner, by a relative of Petitioner, Mr. Sam Ansong, and that that complaint was disposed of on September 15, 1983, by the Associate Commissioner when he advised Sam Ansong that no evidence of improper Immigration and Naturalization Service action was found in the case of Petitioner. No further action was taken by Petitioner or his relative, Sam Ansong, with respect to it.

Petitioner and his relative, Sam Ansong, both testified that on or about April 18, 1984, Sam Ansong dispatched a third complaint to the Service dealing with violations of professional responsibility requirements imposed upon employees of the Service in the handling of Petitioner's deportation proceedings. Petitioner acknowledged that Sam Ansong acted on his behalf in preparing that complaint because of Petitioner's difficulty with the American language and his lack of knowledge of procedures. No copy of that complaint was offered in evidence. The testimony established, however, that Sam Ansong delivered a notice of the filing of the complaint with the "C.O.P. R.R." A copy of *that notice* was admitted in evidence as Petitioner's Exhibit # 1. The exhibit reflects that the notice was dated April 23, 1984, and that it was addressed to "the District Director c/o Mr. Arnold Ellis." It was testified that Sam Ansong delivered the notice to Mr. Ellis at the Service's office in Bangor, Maine in the presence of Petitioner, and that Ellis acknowledged his receipt of the document by placing his notation "A. Ellis" on the copy retained by Sam Ansong. Petitioner knew, at the time of hearing on this petition, of no action having been taken on the alleged complaint of April 18, 1984.

The Respondent countered this testimony with the testimony of Leo R. Neit, a criminal investigator for the Service. Mr. Neit testified, in substance, that as a result of investigative activities undertaken by him, he could find no indication in the records of the Service's Office of Professional Responsibility that the alleged complaint of April 18, 1984, had ever been filed with the Service.

All the evidence on the issue of whether a complaint was filed by or on behalf of Petitioner within the jurisdiction of the Service's Office of Professional Responsibility, on which no preliminary inquiry or investigation had been made, requires that the Court resolve this factual issue against Petitioner. The absence from the record of the original document or of any copy of it, the credible testimony of Mr. Neit that no indication of the filing of such a complaint exists in the records of the Office of Professional Responsibility, and the Court's assessment of the self-interest of Petitioner in his testimony and of the credibility of Sam Ansong, lead to the conclusion that no such complaint was in fact filed on or about April 18, 1984.

Petitioner has argued, *see* Reply, at 5, that Petitioner's Exhibit # 1 establishes the filing of the complaint to which Petitioner and Sam Ansong have testified and on which Petitioner relies herein. That exhibit was admitted in evidence without any contest as to its authenticity as a document issued by some office of the Service. It is a form on which various longhand entries are made, addressed to Petitioner at a University Park, Orono, Maine address, and *dated April 3, 1984.* It states that "[y]our *request* was received in this office *on March 31, 1984;* please note the paragraph(s) checked below." (Emphasis added.) Paragraphs # 5 and # 10 are checked

on the form. The first of these states: "Your *request* comes within the jurisdiction of the office shown below; (see # 10 Below). Your *request* has been sent to that office for consideration and direct reply to you. All future correspondence should be sent to that office." (Emphasis added.)

Paragraph # 10 reads: "Other Remarks: Immigration and Natz. Service, Federal Building Elmwood Avenue Burlington, Vt 05401 Attn: Regional Commissioner, ERO." The form does not indicate, however, and there is no other evidence to show, by what office of the Service it was issued, by what person it was prepared or issued, or to what "request" it refers.

 A federal *habeas* petitioner "has the burden of proving all facts entitling him to a discharge from custody." *Brown v. Cuyler,* 669 F.2d 155, 158 (3d Cir.1982); *see Martin v. State of Texas,* 694 F.2d 423, 426 (5th Cir.1982) (petitioner must prove the allegations on which he relies in his petition at the evidentiary hearing). Petitioner's Exhibit # 1 is not sufficient to carry Petitioner's burden of proof. It fails to corroborate his other evidence on the issue of the filing, on or about April 18, 1984, of a complaint within the jurisdiction of the Service's Office of Professional Responsibility. It refers only to a "request" of the addressee and nowhere states the nature, content or scope of the "request." No other evidence in the record does so. The Court cannot, therefore, conclude that Petitioner's Exhibit # 1 refers to a complaint of the type alleged in ¶ 5 of the petition.

While the exhibit shows the request as being within the jurisdiction of the office to which the request is referred, neither the exhibit nor any other evidence casts any light upon what is the nature or extent of that jurisdiction. The Court has no basis to infer that the office to which the exhibit indicates the request is referred is the Service's Office of Professional Responsibility. Section 287.10(f)(3) of the Operations Instruction provides that such complaints shall be immediately reported by telephone and confirmed to the "COPRR Central Office." The area code specified in the Oper-

ations Instruction for the telephone number of the Central Office indicates that the office is located in the District of Columbia. There is no evidence tending in any way to show that the office to which a complaint of the type alleged is required by the Operations Instruction to be *immediately* sent is that office indicated in Petitioner's Exhibit # 1 as the place to which the "request" referred to therein was sent.

The Court finds, therefore, that the "request" referred to in Petitioner's Exhibit # 1 is not a complaint of the type alleged in ¶ 5 of the petition herein, but is another kind of communication not subject to handling as required by the Operations Instruction.

Finally, it is crystal clear that even if the request was a complaint of the type alleged, it is not the specific complaint alleged in ¶ 5, upon the filing of which the Petitioner herein relies. Paragraph 5 alleges that the complaint was filed on April 18, 1984. Petitioner and Sam Ansong testified that the complaint referred to in the petition was filed on or in close proximity to that date. On the other hand, Petitioner's Exhibit # 1 is dated fifteen days prior to April 18, 1984, and specifically refers to a "request" received by some office of the Service on March 31, 1984, some nineteen days before that date. Exhibit # 1 cannot possibly refer to a complaint allegedly filed on or about April 18, 1984.

 The Court accordingly finds that no complaint to the Office of Professional Responsibility was filed by the Petitioner as alleged in ¶ 5 of the petition upon which there remained uncompleted a preliminary inquiry or an investigation. It is found that, as of the date of the commencement of this Petition for Writ of *Habeas Corpus* and as of the date of the issuance of the warrant of deportation on April 25, 1984, no complaint to that office was pending *on behalf of* this Petitioner.

It is, therefore, unnecessary for the Court to approach or to decide whether or not the pendency of any such complaint with the Office of Professional Responsibil-

ity does or does not give rise to an automatic suspension of deportation during the pendency of a preliminary inquiry or an investigation thereon. The Court intimates no view on that question. The Court is aware of a diversity of views among several of the Circuits with respect to the issue of whether or not another of the Service's Operations Instructions confers any substantive right upon aliens subject thereto so as to implicate the Fifth Amendment right to procedural due process. *See Velasco-Gutierrez v. Crossland*, 732 F.2d 792 (10th Cir.1984); *Pasquini v. Morris*, 700 F.2d 658 (11th Cir.1983); *Dong Sik Kwon v. Immigration and Naturalization Service*, 646 F.2d 909 (5th Cir.1981); *contra, Nicholas v. Immigration and Naturalization Service*, 590 F.2d 802 (9th Cir.1979).

It is significant to note in passing that the foregoing cases would not in any event have bearing upon this case as it is postured by Petitioner since the petition does not assert any claim of deprivation of due process under the Fifth Amendment because of the Service's failure to comply with the stay of deportation provided for in Section 287.10(f)(5) of the Operations Instruction. Nor is any such claim asserted in Petitioner's reply to the Respondent's response, nor was any such argument or claim advanced at argument. The issue as to the effect of a violation of Section 287.-10(f)(5) of the Operations Instruction need not be addressed, principally for the reason that the Court has found as a fact that, as of the date of both the issuance of the warrant of deportation and of the commencement of this action, no complaint subject to the provisions of that paragraph of the Operations Instruction was filed with or pending before the Service's Office of Professional Responsibility. Further, Petitioner has not raised any claim of violation of procedural due process. These determinations are dispositive of the first basis of Petitioner's claim for relief herein as set forth in ¶ 5 of the petition.

## IV.

▬ Now to be addressed is Petitioner's second basis of his claim for relief:

that he has married a United States citizen and now claims residence through this citizen. It was observed in the case of *Mendez v. Major*, 340 F.2d 128, 131–32 (8th Cir.1965), that

> [t]here can be no doubt that Congress has the power to determine the conditions under which an alien may enter and remain in the United States, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 [73 S.Ct. 625, 97 L.Ed. 956] ...; *Harisiades v. Shaughnessy*, 342 U.S. 580 [72 S.Ct. 512, 96 L.Ed. 586] ...; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 [70 S.Ct. 309, 94 L.Ed. 317] ...; even though the conditions may impose a certain amount of hardship upon an alien's wife or children.

The three United States Supreme Court cases there cited, read together, make it clear that the Constitution imposes no inhibition upon the deportation of a resident alien in spite of an anticipated adverse effect upon a marital relationship which the alien shares with another. Even were the citizen spouse to be a party to this action, which she is not, it is clear that the alien subject to deportation "enjoys no special right to remain in this country, it being within congressional discretion to place conditions on ... [his] right of entry or continued residence," *Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir.1970), and that deportation of an alien subject to deportation does not, because of the existence of a marital relationship, violate the constitutional rights of either the deportable alien or the resident or citizen spouse of that alien. *Id.*

▬ The long and the short of the matter is that the alien may have a right to proceed under the statute, through appropriate procedural channels, to ultimately establish a right to residence in the United States as the spouse of a citizen of the United States, but that such right does not encompass a right to remain in the United States while the merits of the first-claimed right are administratively determined or judicially adjudicated if he is otherwise sub-

ject to lawful deportation. The statute, 8 U.S.C. § 1154, and the regulations promulgated thereunder, do not create any bar to his being deported where independent cause for such deportation exists, pending his establishment of such right through the appropriate procedural channels. In the absence of any such provision in the statute or regulations, it is clear that the United States is entitled to exercise its sovereign right to require him to leave the country, by deportation if necessary and appropriate, even if he has contracted a legally valid marriage to the witness Barbara Ansong,[4] until such time as any derivative residency status arising from such marriage to a United States citizen has been established.

## V.

The Petition for a Writ of *Habeas Corpus* is DENIED; and it is ORDERED that the Petitioner, Omari Ansong, shall provide his passport to the Immigration and Naturalization Service within forty-eight (48) hours.

So ORDERED.

4. The Court finds it unnecessary to decide the validity of the claimed marriage.